UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES CUNNINGHAM,

                         Petitioner,

      -vs-

JAMES T. CONWAY, Superintendent
Attica Correctional Facility,

                      Respondent.
_____

**No. 07-CV-6005(DGL)(VEB)**
**REPORT AND RECOMMENDATION**

## I.      INTRODUCTION

By a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, petitioner *pro se*
James Cunningham ("Cunningham" or "petitioner") seeks release from state-custody, arguing
that his Erie County Court conviction on charges of Murder in the Second Degree (N.Y. Penal
Law § 125.25(1)) and Criminal Possession of a Weapon in the Third Degree (Penal Law §
265.02(1)) was unconstitutionally obtained. This matter has been referred to me pursuant to 28
U.S.C. § 636(b)(1) for the purposes of, *inter alia*, issuing a report and recommendation regarding
the disposition of Cunningham's petition, and hearing and deciding non-dispositive motions. For
the reasons that follow, I recommend that Cunningham's request for a writ of habeas corpus be
denied and that the Petition be dismissed.

## II.     FACTUAL BACKGROUND

The indictment against Cunningham arose from the fatal stabbing of Effie Townes
("Townes" or "the decedent") on October 12-13, 2001, at her apartment.

The proof at trial concerning what occurred inside Effie Townes' home on the night of
the incident was provided by petitioner's second statement to the police and the testimony of the

county medical examiner. In his first statement to police, petitioner admitted to knowing Townes and stated that he had last seen her on Friday afternoon, October 12, 2001, but he denied any knowledge of the circumstances of her death. T.207.[1] It was only after being confronted by Detective Mark Stambach with the inconsistencies in his initial statement that Petitioner admitted his role in Townes' death. Petitioner told Stambach that he went to Townes' home on Friday night and went to buy beer with money given to him by Townes. T.228. On his return, an argument ensued in the kitchen because Townes believed he had taken too long returning with the beer and had taken some of the money for himself. T.228. When Townes pushed him and slapped him in the face, he pushed her back. T.228. Townes then reached into a drawer and grabbed something with her hand. T.228. Petitioner related that, "it [sic]e went blank, and when he "came to," Townes was on the floor bleeding from the stomach.. T.228. Petitioner admitted that he stabbed Townes in the stomach, took her telephone, and left the home after using her keys to lock the back door. T.229. In explaining his conduct, petitioner stated that when he came to and saw Townes on the floor, he was scared, that her death was an accident and he did not mean to harm her. T.229. He noted that both he and Townes were drunk after consuming beer. T.231. At the prompting of Stambach as to whether he had anything further to add, petitioner noted that he remembered Townes with a knife, taking it away from her and her attacking him. T.231. Expressing remorse for her death, petitioner stated that Townes attacked him first and he did not want to be hurt. T.231.

The Erie County Associate chief medical Examiner, performed an autopsy on the 5' 3"-, 116-pound body of Effie Townes on October 16, 2001. T.246. His external examination revealed

---

[1]        Citations to "T.__" refer to pages of the trial transcript.

a laceration behind her right ear with internal hemorrhaging which he attributed to being hit with a hand or blunt object. T.247, 251. Additionally, he observed nine stab wounds in a 4-inch by 2-inch area on Townes' chest, the deepest of which was four inches. T.248-49. These wounds, six of which penetrated her heart, also involved her aorta and liver and cut through her sixth and seventh ribs T.248. The medical examiner opined that the stab wounds were delivered with great force and enough to penetrate the bone in her ribs. T.252. He also testified that while Townes' blood alcohol content was .10%, the only drug present in her urine and blood was a heart medication, Metropropol. T.254.

The jury returned a verdict finding Cunningham guilty on both counts. Cunningham was sentenced to concurrent terms of imprisonment of twenty-five years to life on the murder conviction and three and one-half to seven years on the weapon possession count. Cunningham was re-sentenced to a term of three to seven years on the weapon possession count on September 18, 2002.

## III.   PROCEDURAL HISTORY

### A.   STATE POST-CONVICTION PROCEEDINGS

On direct appeal, Cunningham's appellate counsel presenting five issues: 1: the trial court erred in not suppressing petitioner's two statements to the police; 2: the trial court abused its discretion in allowing the prosecution to recall Detective Mark Stambach 3: the evidence was insufficient to disprove the defense of justification and the verdict was against the weight of the evidence; 4: defendant's intoxication negated defendant's intent to commit the murder 5: the sentence imposed on defendant was harsh and excessive. On December 30, 2004, the Appellate Division, Fourth Department, unanimously affirmed the conviction. *People v Cunningham*, 13

A.D.3d 1118 (N.Y. App. Div. 4th Dept. 2004). Thereafter, the petitioner filed a leave application with the New York Court of Appeals seeking review on the following two issues: (1) the trial court abused its discretion in allowing the People to recall Detective Mark Stambach; and (2) the trial court erred in not suppressing petitioner's statements to the police. Leave to appeal was denied on March 14, 2005. *People v. Cunningham*, 4 N.Y.3d 829 (N.Y. 2005).

On February 14, 2006, petitioner filed a motion to vacate judgment, pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, and raised these issues: (1) the indictment was defective because neither count set forth a the specific section of the penal law alleged to have been violated; (2) the trial court's jury instructions on the element of intent were improper; (3) trial counsel rendered ineffective assistance by not objecting to the recall testimony offered by Detective Mark Stambach. The trial court denied the motion in its entirety in an order dated January 19, 2007. Petitioner filed an application to the Appellate Division, Fourth Department, for leave to appeal the trial court's order, but leave was denied.

## B.     THE FEDERAL HABEAS PROCEEDING

As claims for habeas relief, Cunningham's Petition raises the same grounds that he raised in his appellate brief on direct appeal. Respondent answered the Petition, interposing the affirmative defenses of non-exhaustion and procedural default as to certain of Cunningham's claims, as discussed further below.

Cunningham filed a bare-bones motion to stay (Docket No. 17) so that he could file a C.P.L. § 440.10 motion in state court for the purposes of exhausting unspecified and unidentified claim(s). The lack of detail in the stay motion did not comport with the Supreme Court's requirements in *Rhines v. Weber*, 544 U.S. 269 (2005), for determining whether invocation of the

stay-and-abeyance procedure was appropriate. Prior to a ruling being issued on the stay motion, Cunningham filed a document docketed as a Request to Lift the Stay with Exhibits (Docket No. 18). The Exhibits included Cunningham's C.P.L. § 440.10 motion papers, the prosecution's opposition papers, and the trial court's decision and order denying C.P.L. § 440.10 relief. It appears that the new claim that Cunningham wished to add to his habeas Petition was an argument that the prosecution violated the notice provisions of C.P.L. § 710.30.

For the reasons discussed below, I recommend that petitioner's Petition be dismissed. I further recommend that petitioner's Motion for a Stay, which implicitly included a Motion to Amend, be denied with prejudice. Even if the allegedly newly exhausted claim were added to the Petition, it should be denied as not cognizable on habeas review.

## IV.    GENERAL LEGAL PRINCIPLES APPLICABLE TO HABEAS PETITIONS

### A.    AEDPA

Because Smith filed his habeas petition after April 24, 1996, we review all claims that were adjudicated on the merits by the Ohio state courts under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (codified at 28 U.S.C. § 2254). Under AEDPA,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
> 28 U.S.C. § 2254(d).

The Supreme Court has explained that subsection 2254(d)(1) contains two prongs, the "contrary to" and the "unreasonable application of" clauses, each with an independent meaning. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). A decision is contrary to clearly established federal law if either "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," *id.* at 405, or "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406. A decision is an unreasonable application of clearly established federal law, on the other hand, if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

**B.      Section 2254(b)(1)'s Exhaustion Requirement**

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of on his conviction before he may seek a writ of habeas corpus in federal court. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."); *see also Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994). The "exhaustion of state remedies" requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir.1991)). A claim is properly exhausted when the state court is fairly apprised of

the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20. "Additionally, the Supreme Court has held that when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claim procedurally defaulted." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)).

       **C.**      **"Adequate and Independent State Ground" Doctrine and Procedural Default**

"Federal habeas review is prohibited if a state court rests its judgment on an 'adequate and independent state ground.'" *Levine v. Commissioner of Correctional Srvcs.*, 44 F.3d 121, 126 (2d Cir.1995) (quoting *Harris v. Reed*, 489 U.S. 255, 261-62 (1989)). To overcome a procedural default based upon this doctrine, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 1991) (citing *Coleman*, 501 U.S. at 748-50). "The doctrine applies whether the default occurred at trial, on appeal or on state collateral review." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986)).

**III.**    **ANALYSIS OF THE PETITION**

       **A.**      **The Claims Pertaining to Petitioner's Statements to the Police (Grounds One and Six)**

            **1.**      **The Suppression Hearing**

                  **a.**      **Petitioner's First Statement**

The hearing evidence revealed that defendant was picked up at 69 Liddell Street at 5:30

p.m. on October 15, 2001. H.6.[2]  Detective James Giardina testified that petitioner agreed to

accompany him to police headquarters.  H.7. Ten minutes later at 5:40 p.m., he arrived at police

headquarters where he was interviewed by Detective Giardina until 6:00 p.m. H.8. Giardina took

a written statement from defendant which commenced at 6:10 p.m. and ended at 6:52 p.m. H.18.

Defendant was then left unattended for ten to fifteen minutes while Giardina conferred with

fellow officers, returning to read defendant his *Miranda* warnings[3] at 7:05 p.m.  H.14.

Twenty-five minutes later, Detective Stambach began his interview with defendant at 7:30 p.m.

which lasted for about thirty to forty-five minutes. H.40. Defendant's second written statement

was concluded at 10:00 p.m. H.48.

Turning back to the testimony concerning the circumstances of Cunningham's first

statement, Detective Giardina interviewed him for 15 to 20 minutes. In the interview, Giardina

gathered pedigree information, as well as inquired how well petitioner knew Townes, when was

the last time he had seen or spoken to her, and where he was on the night of her death. H.7-10. At

the conclusion of this interview, Giardina took a written statement from petitioner (People's

Hearing Exhibit 1). Giardina then gave the petitioner a break and offered petitioner food, drink

and an opportunity to use the bathroom.

### b.    Petitioner's Second Statement

During this break, while conferring with his colleagues, Giardina discovered that there

was an inconsistency in petitioner's statement concerning the last time he had seen Townes.

Therefore, Giardina decided to speak to him again . H.14, 34.  At that time, Giardina issued

---

[2]    Citations to "H.___" refer to the transcript of the pre-trial suppression hearing.

[3]    *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

*Miranda* warnings to the petitioner. Petitioner acknowledged that he understood the warnings and agreed to speak to Giardina. H.22. Petitioner never asked for a lawyer, did not refuse to answer questions and never asked to leave, according to Giardina  H.24-25.

After reviewing petitioner's statement, Detective Mark Stambach decided to re-interview petitioner. Because petitioner had already been advised of his rights b Giardina, Stambach did not re-read them H.38. The interview lasted between thirty to forty-five minutes, and began when Stambach told petitioner that he had read his first statement and believed that he had not been truthful. H.39. While reviewing the statement with petitioner, Stambach pointed out inconsistencies and advised petitioner that he believed petitioner's hair and fingerprints would be found at the scene. H.40-41.

Stambach testified that defendant was never handcuffed at any time, was free to leave had he chosen to do so, never requested a lawyer, and that he did not tell defendant that he was a suspect in Townes' death. H.49, 58. Petitioner then admitted to stabbing Townes. Stambach reduced petitioner's statement to writing, which petitioner initialed and signed as being correct H.47-48.

### c.      Petitioner's Testimony at the Suppression Hearing

Cunningham testified at the hearing and admitted that he voluntarily accompanied the police to headquarters to speak with them SH.22-23, 31.[4] Defendant testified that while at police headquarters, he asked if he was under arrest and was told no. SH.23. He recalled that when he requested a lawyer in the presence of Detectives Giardina and Aronica, they told him that he did

---

[4]       Citations to "SH.__" refer to pages of the transcript of the continued suppression hearing on May 6, 2002.

not need one because they only had a few questions after which he could leave SH.23.

Cunningham acknowledged that he was advised of his *Miranda* warnings but stated the police

ignored his repeated requests for a lawyer. SH.25. According to Cunningham, he only admitted

to stabbing Townes because Detective Stambach would not stop badgering him. SH.25.

Cunningham asserted that his second statement was a lie he concocted to please Detective

Stambach. SH.55. Cunningham explained that he signed and initialed his statement because the

detectives requested that he do so. SH.27.

Cunningham admitted the police offered him food, beverages, the opportunity to use the

bathroom. SH.12, 33. Cunningham also admitted that he was familiar with the *Miranda* warnings

because they had been read to him several times before in his life. SH.46, 47. He conceded the

awareness of his right to remain silent, but claimed that he did not invoke it because he was

being badgered by Detective Stambach. SH.54.

### d.     The State Courts' Rulings

The suppression court held both of Cunningham's statements to be admissible at trial. It

found that the first statement was not made while Cunningham was "in custody" and therefore

*Miranda* warnings were unnecessary. Cunningham conceded that "his initial, pre- *Miranda*

statement at police headquarters was not a confession to the stabbing, but rather an entirely

different description of [his] encounters with Effie Townes." Petitioner's Reply Appellate Brief,

2004 WL 5490143, at *3. As to the second statement, the suppression court also held that

Cunningham was not in custody, and, in any event, Cunningham knowingly, voluntarily, and

intelligently waived his rights before giving that statement. On direct appeal, the Appellate

Division agreed that both statements were admissible, and disposed of petitioner's claims as

follows:

> We reject the further contention of defendant that [the] County Court erred in denying his motion to suppress his statements. The court properly determined that defendant was not in custody when he gave police a statement before he was given *Miranda* warnings. Inasmuch as defendant willingly accompanied police, was not handcuffed, was offered food and beverages, was left alone for a period of time and was not questioned in an accusatory fashion, we conclude that "[a] reasonable person innocent of any crime would not have believed that he was in custody, and thus warnings were not required" *see People v. Yukl*, 25 N.Y.2d 585, 589, 307 N.Y.S.2d 857, 256 N.E.2d 172, *rearg. denied* 26 N.Y.2d 845, 309 N.Y.S.2d 593, 258 N.E.2d 90, *cert. denied* 400 U.S. 851, 91 S.Ct. 78, 27 L.Ed.2d 89. Although we agree with defendant that the court erred in determining that he was not in custody when he gave his second statement, we conclude that the evidence at the *Huntley* hearing supports the court's determination that defendant was advised of his *Miranda* rights, that he waived those rights and that his statement was voluntary. Defendant raises for the first time on appeal, and therefore failed to preserve for our review, his contention that the second statement was the result of continuous interrogation and must therefore be suppressed (*see* CPL 470.05(2)). Were we to review that contention as a matter of discretion in the interest of justice, we would conclude that, "[b]ecause the initial statement was not the product of pre-*Miranda* custodial interrogation, the post-*Miranda* detailed confession given by defendant cannot be considered the fruit of the poisonous tree" (*People v. Flecha*, 195 A.D.2d 1052, 1053, 600 N.Y.S.2d 400. Defendant also failed to preserve for our review his remaining contention with respect to his statements and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* [C.P.L.] 470.15(6)(a)).

*People v. Cunningham*, 13 A.D.3d 1118, 1119, 786 N.Y.S.2d 677, 678 (App. Div. 4th Dept.

2004) (some internal citations omitted).

### e.     The state courts did not unreasonably apply federal law in holding petitioner's statements admissible

First, the state courts did not improperly apply federal law in concluding that

Cunningham was not in custody when he gave his first (unwarned) statement to Detective

Giardina. As respondent argues, the test the state court employed for determining whether the

interrogation was custodial–whether a reasonable person innocent of any crime would have

believed that he was in custody, *People v Yukl*, 25 N.Y.2d 585, 589 (N.Y. 1969), *rearg. denied*, 26 N.Y.2d 883 (N.Y.), *cert. denied*, 400 U.S. 851 (1970)) is similar to the federal standard–whether a reasonable person in defendant's position would have understood himself to be subjected to restraints comparable to those associated with a formal arrest," *Berkemer v McCarty*, 468 U.S. 420, 441 (1984); *accord, e.g.*, *United States v Ruggles*, 70 F.3d 262 (2d Cir. 1995), *cert. denied*, __ U.S. __, 116 S.Ct. 1284 (1996); *United States v. Mussaleen*, 35 F.3d 692, 697 (2d Cir.1994) ( "The test for . . . custody is 'whether a reasonable person in the defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest.'") (quoting *Berkemer v. McCarty*, 468 U.S. at 442).

The Second Circuit has explained,

> The test for custody is an objective one: "whether a reasonable person in defendant's position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest."
> . . .
> [I]t makes sense for a court to begin any custody analysis by asking whether a reasonable person would have thought he was free to leave the police encounter at issue. If the answer is yes, the *Miranda* inquiry is at an end; the challenged interrogation did not require advice of rights. On the other hand, if a reasonable person would not have thought himself free to leave, additional analysis is required because . . . not every seizure constitutes custody for the purposes of *Miranda*. In such cases, a court must ask whether, in addition to not feeling free to leave, a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest. Only if the answer to this second question is yes was the person " 'in custody' for practical purposes," and "entitled to the full panoply of protections prescribed by *Miranda*."

*United States v. Newton*, 369 F.3d 659, 671, 672 (2d Cir. 2004) (citations omitted); *accord, e.g.*, *Tankleff v. Senkowski*, 135 F.3d at 243-44 (2d Cir. 1998). Determining whether the subject was in custody therefore "'depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'"

*Vega v. Artuz*, No. 97 CIV 3775 LTS JCF, 2002 WL 252764, at *9 (S.D.N.Y. Feb. 20, 2002) (quoting *Stansbury v. California*, 511 U.S. 318, 323 (1994). Factors relevant to the custody inquiry include "whether a suspect is or is not told that [he or] she is free to leave; the location and atmosphere of the interrogation; the language and tone used by the police; whether the suspect is searched, frisked, or patted down; and the length of the interrogation." *Tankleff v. Senkowski*, 135 F.3d at 244 (citations omitted)

As respondent argues, Cunningham's movements were not restrained while he was at the police station. There was no proof that there was any restraint on petitioner's freedom of movement to the degree associated with a formal arrest. *California v Beheler*, 463 U.S. 1121, 1125 (1983). The police did not question Cunningham continuously; rather, he was allowed two breaks where he was left alone, and he was also offered food and something to drink. . police did not act in a coercive or manner or The questioning was not accusatorial and he was offered food and drink. It has been held that *Miranda* warnings are not required simply because the questioning took place in a "coercive environment". *Oregon v Mathiason*, 429 U.S. 492, 495 (1977). Because the facts here do not clearly establish custody, it cannot be said that the state court unreasonably applied clearly established Supreme Court law in concluding that petitioner had not shown that he was "in custody" for *Miranda* purposes.

With regard to the second statement given by Cunningham, the state courts properly determined that petitioner made a valid waiver of his *Miranda* rights. In *Miranda v. Arizona*, 384 U.S. at 444, the Supreme Court held that "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. In

the context of custodial interrogation, "unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). After a defendant is advised of the *Miranda* warnings, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. In addition to being knowing and intelligent, a defendant's waiver of his rights under *Miranda* must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

After making a determination that an accused has orally answered that he understood and wished to waive his *Miranda* rights, the Court must "make a case-by-case determination based upon the totality of the circumstances" as to whether the waiver was constitutionally sufficient. *United States v. Gaines*, 295 F.3d 293, 297-98 (2d Cir. 2002) (citing *North Carolina v. Butler,* 441 U.S. 369, 373 (1979); *Tankleff v. Senkowski*, 135 F.3d at 244-45). "[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Butler*, 441 U.S. at 374-75 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); citations omitted).

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *Butler*, 441 U.S. at 373. *See also*, *e.g.*, *United States v. Male Juvenile*, 121 F.3d 34 (2d Cir.1997); *Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir.1997) (Although undisputed facts showed petitioner "refused to sign the [*Miranda*] waiver card" and that an officer "was the only witness to the alleged waiver," habeas denied.); *Nelson v.*

*Walker*, 121 F.3d 828, 829-30, 835 (2d Cir.1997) (affirming denial of habeas petition and holding confession admissible where accused "did not sign or initial any document indicating that he waived his *Miranda* rights"); *United States v. Boston*, 508 F.2d 1171, 1175 (2d Cir.1974) (affirming district court's finding of *Miranda* waiver, as "[i]t is clear, in any event, that a written waiver is not required"); *United States v. Johnson*, 289 F. Supp.2d 151, 159-60 (D. Conn. 2003) ("The fact that the detectives did not read the *Miranda* rights aloud to [defendant], or ask him to initial next to each right, is not fatal in this context. . . . Having received the *Miranda* warnings, . . . [defendant's] decision to make an admission to [law enforcement], upon reflection, after initially asserting his right not to incriminate himself, constitutes a knowing and intelligent waiver of his rights."); *United States v. Miller*, 382 F. Supp.2d 350, 370 (N.D.N.Y. 2005); *United States v. Egipciaco*, 389 F. Supp.2d 520 (S.D.N.Y. 2005); *United States v. Cooper*, 95 Cr. 0031, 1995 WL 469702 at *4 (S.D.N.Y. Aug. 8, 1995) (holding that no *Miranda* violation occurred although defendant "objected to the officer taking notes of his confession." "[T]here may be several strategic reasons why a defendant willing to speak to police would still refuse to write out his answers to questions, or to sign a transcript of his answers prepared by the police . . . .") (citing *Connecticut v. Barett*, 479 U.S. 523, 530 n. 4 (1987)).

As noted above, "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler*, 441 U.S. at 373; *see also United States v. Durham*, 556 F. Supp.2d 141, 151 (N.D.N.Y. 2008) ("In the present Motion, Defendant raised a factual dispute: whether *Miranda* was administered and whether Defendant made a statement indicating a waiver of his rights. In his affidavit, Defendant

makes the general claims he was not asked to, and did not, waive his *Miranda* rights. Defendant does not allege a specific circumstances that negates the validity of an oral waiver. Given that the Court has found that Defendant did orally state that he waived his *Miranda* rights, the Court is not required to examine whether the Government has proved the absence of every factual circumstance that could potentially negate a valid waiver."). With respect to his *Miranda* waiver, Cunningham acknowledges he understood the warnings and agreed to be questioned. Tellingly, he acknowledged his familiarity with the *Miranda* warnings as the result their having been read to him during other situations earlier in his life.

The crux of the *Miranda* dispute appears to be whether Cunningham asked for an attorney: Cunningham says that his request for the presence of counsel was ignored, and the police say that Cunningham never asked for an attorney. Ultimately, this sort of inquiry merely presents a credibility issue decided against petitioner at the suppression hearing. The trial court's findings were based upon an extensive development of the record by means of a suppression hearing involving the testimony of multiple witnesses, including Cunningham. As such, the trial court's factual findings, including those regarding witness credibility, are entitled to a presumption of correctness which petitioner bears the burden of overcoming by clear and convincing evidence. *Nelson v. Walker*, 121 F.3d at 833-34(citations omitted); 28 U.S.C. § 2254(e)(1); *United States v. Gaines*, 295 F.3d at 298 ("Assessments of credibility of witnesses are the province of the [trial] court.") (quoting *United States v. Rosa*, 11 F.3d 315, 329 (2d Cir.1993)). Here, the record amply supports the trial court's factual findings and the conclusion that petitioner knowingly and voluntarily waived all of *Miranda* before speaking with the police prior to the questioning that resulted in the second statement.

With regard to Cunningham's argument that the second statement was the result of continuous interrogation and must therefore be suppressed, the Appellate Division held that the issue was unpreserved but in any event without merit "[b]ecause the initial statement was not the product of pre-*Miranda* custodial interrogation, the post-*Miranda* detailed confession given by defendant cannot be considered the fruit of the poisonous tree[.]" *People v. Cunningham*, *supra* (citations omitted). The Appellate Division's ruling that the trial court's decision to admit Cunningham's statements was not reversible error was consistent with the Supreme Court's holding in *Oregon v. Elstad*, 470 U.S. 298, *supra*. In *Elstad*, the Supreme Court made clear that even if a defendant's initial statement is considered "incriminating and obtained in violation of the *Miranda* rule, that does not render his later, fully warned confessions inadmissible." *Nova v. Bartlett*, 211 F .3d 705, 708 (2d Cir. 2000) (citing *Elstad*, 470 U.S. at 311-14).

In *Elstad*, the Supreme Court held that the initial failure of the police to administer *Miranda* warnings, absent actual coercion or other circumstances calculated to undermine a suspect's free will, does not taint subsequent admissions made after the suspect has been fully advised of his *Miranda* rights and voluntarily waives them. 470 U.S. at 318. Rather, "a properly warned confession [need not] be suppressed because it was preceded by an unwarned but clearly voluntary admission . . . In these circumstances, a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible." *Elstad*, 470 U.S. at 310-11. Admissibility of the warned confession depends on whether it, and any earlier unwarned inculpatory statements, were voluntarily made. 470 U.S. at 318 (" Far from establishing a rigid rule, we direct courts to avoid one; there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in

violation of *Miranda*, was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing 'taint' to subsequent statements obtained pursuant to a voluntary and knowing waiver. We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings.") (footnote omitted). Looking at the "the totality of the circumstances", Cunningham's subsequent statements were made following a knowing and voluntary waiver of rights. Accordingly, I recommend dismissal of this claim.

### B. The claim that the trial court erroneously permitted the prosecutor to re-call Detective Stambach (Grounds Two and Seven)

Petitioner argued that the trial court abridged his rights to due process and a fair trial (U.S. Const, amends. 5 & 14; NY Const., Art. I, §6) when it permitted the prosecutor to re-call Detective Stambach to testify regarding a factual issue that was within the province of the jury to determine, namely, the officer's lack of belief in petitioner's claim of self-defense.

At the conclusion of the medical examiner's testimony, the prosecutor informed the court that he wanted to recall Detective Stambach "just to ask him a few more questions that I did not ask him this morning regarding just one or two instances." T.258. Defense counsel objected and

requested an offer of proof from the prosecution. *Id.* Trial counsel objected to the People's

witness being recalled, there having been two complete opportunities for redirect examination by

the assistant district attorney, *see* T.238-40. While acknowledging counsel's objection, the trial

court stated that whether to permit recalling a witness was "discretionary with the court," and

ordered the prosecutor to have Detective Stambach available in the morning to testify again.

T.258.

On appeal, Cunningham's appellate counsel the trial court abused its discretion in

permitting the recall of Detective Stambach without an offer of proof because Stambach offered

"opinion/expert" testimony which improperly invaded the province of the jury. The state argued

on appeal that trial counsel did not voice an objection on that basis during trial, pointing out that

trial counsel did not object to the testimony actually elicited on recall or move to have it stricken

or request curative instructions. Accordingly, the state argued, the issue was unpreserved for

appellate review. People's Appellate Brief (citing N.Y. CRIM. PROC. LAW § 470.05(2); *People v*

*Washington*, 282 A.D.2d 375, 376 (App. Div. 1ˢᵗ Dept.) ("Defendant has failed to preserve for

appellate review his contention that the court erred in permitting the People to recall the arresting

officer to provide expanded testimony on the issue of probable cause after the officer had an

opportunity to listen to an audiotape of the transmissions, and we decline to review it in the

interest of justice. Were we to review this claim, we would find that the court properly exercised

its discretion in this regard[.]") (citing *People v. Branch*, 83 N.Y.2d 663, 665 (N.Y. 1994) ("This

appeal raises the question of whether the trial court abused its discretion when, during direct

examination, it allowed the prosecutor to hold a brief private conference with a witness after that

witness had given an unexpected and potentially damaging response. We hold that the trial court

acted within its discretion in permitting such a conference to take place with appropriate safeguards.") ; *People v. Olsen*, 34 N.Y.2d 349, 353 (N.Y. 1974) ("[T]he order of trial in criminal cases is fixed by statute . . . [but] [t]he statutory framework however is not a rigid one and the common-law power of the trial court to alter the order of proof 'in its discretion, (and) in furtherance of justice remains at least up to the time the case is submitted to the jury[.]") (citations omitted)), *lv. denied*, 96 N.Y.2d 925 (N.Y. 2001).

Appellate counsel for petitioner conceded that trial counsel's failure to move to strike Detective Stambach's recall testimony arguably could result in a lack of preservation. *See* Petitioner's Reply Brief on Appeal, 2004 WL 5490143, at *5-6 ("Even assuming, *arguendo*, that defense counsel's failure to move to strike Detective Stambach's recall testimony is inadequate preservation, appellant urges this Court to review the issue in the interest of justice because of the critical nature of the error, i.e.[,] usurpation of the jury function on the most important question the jurors faced, to wit, whether appellant's actions in stabbing Effie Townes were justified as a matter of law."). In addition to the failure-to-preserve argument, the prosecution also asserted that trial counsel's cross-examination of Detective Stambach had  "opened the door" to the inadmissible recall testimony.

The Appellate Division failed to be precise with the facts concerning trial counsel's efforts at preserving this evidentiary claim when it held as follows:

> By failing to object to the court's ruling permitting the People to recall a witness, or to object to the testimony of that witness, defendant failed to preserve for our review his contention that the court abused its discretion in permitting the People

to recall the witness (*see* CPL 470.05(2); [5] *People v Woodard*, 11 AD3d 899 (2004); *People v Law*, 273 AD2d 897, 898 ([App. Div. 4th Dept.] 2000) [(Defendant contends . . . that the expert improperly invaded the province of the jury. Defendant failed to object to the testimony of that expert, and thus failed to preserve his present contentions for our review (*see*, CPL 470.05 (2); *People v Jones*, 261 AD2d 920, lv denied 93 NY2d 972))], *lv denied* 95 NY2d 965 (2000)), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 (6) (a)).

*People v. Cunningham*, 13 A.D.3d at 1119, 786 N.Y.S.2d at 679.

Respondent argues that because the intermediate state appellate court found that petitioner's evidentiary claim was not preserved for review, there is an adequate and independent basis, or procedural default, thereby precluding habeas corpus review. Resp't Mem. at 15 (citing *Wainwright v Sykes*, 433 U.S. 72 (1977)). For a state procedural rule to be "independent," the state law basis for the decision must not be interwoven with federal law. *Florida v. Powell*, ___ S.Ct. ___ , 2010 WL 605603, at *5, *6 n.4 (U.S. Feb. 23, 2010) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). For a state procedural bar to be "adequate," it must be "based on a rule that is firmly established and regularly followed by the state in question." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)). "'[T]he question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question.'" *Cotto*, 331 F.3d at 239 (quoting *Garcia*, 188 F.3d at 77 (quoting *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)

---

[5] The Appellate Division relied upon New York's contemporaneous objection rule, codified in N.Y. Crim. Proc. Law § 470.05(2)), which establishes that an issue is preserved for appeal as a matter of law only when the appellant objected on that ground during the trial. *Glenn v. Bartlett*, 98 F.3d 721, 724 n. 2 (2d Cir. 1996) ("Under New York law, an issue is properly preserved for appeal as a matter of law only if the appellant objected on that ground in the trial below. *People v. Cona*, 49 N.Y.2d 26, 33-34, 424 N.Y.S.2d 146, 399 N.E.2d 1167 (1979); *see* N.Y. CRIM. PROC. LAW § 470.05(2) and Practice Commentaries at 9-10. However, the Appellate Division may, as a matter of discretion, rule on a forfeited claim 'in the interest of justice.' *See* N.Y. CRIM. PROC. LAW § 470.15(6).")

(internal quotations omitted in original)) and citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (stating that it is not within the state's prerogative to decide whether a state rule is sufficient to bar consideration of a federal claim; adequacy itself is a federal question)).  The burden of proving the adequacy of a state procedural rule lies with the state. *Cotto*, 331 F.3d at 238 & n.9.

Both the Supreme Court and the Second Circuit have held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05 , is an adequate and independent state ground. *See*, *e.g.*, *Wainwright v. Sykes*, 433 U.S. at 86, 90 (contemporaneous objection rule is an adequate and independent state ground); *Murray v. Carrier*, 477 U.S. 478, 485-92, 497 (1986) (same); *Garcia v. Lewis*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules." ) (citing *Bossett v. Walker*, 41 F.3d at 829 n. 2 (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), *cert. denied*, 514 U.S. 1054 (1995), and *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), *cert. denied*, 502 U.S. 883 (1991)).  The Court does not disagree that New York's contemporaneous objection rule is generally adequate to preclude federal habeas review, but rather believes that the rule was "misapplied in [t]his case in particular," *Garcia*, 188 F.3d at 79, since it appears that petitioner's attorney "'substantially complied' with the rule given 'the realities of trial,'" *Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 376).   However, the Court need not resolve this potentially complicated procedural issue because the underlying evidentiary claim is more easily resolved on the merits, as discussed below.

"In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "). Thus, a habeas petitioner must demonstrate that the allegedly-erroneous state court evidentiary rulings violated an identifiable constitutional right. *See*, *e.g.*, *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988) ("The [habeas] court must determine whether the exclusion [of testimony] was an error of constitutional dimension. . . ."); *Taylor v. Curry*, 708 F.2d 886, 890-91 (2d Cir.) ("Erroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a *fundamentally fair trial*.") (emphasis in original), *cert. denied*, 464 U.S. 1000 (1983).

In order to determine whether the effect of state-law evidentiary rulings can give rise to an "unreasonable application of [] clearly established Federal law," 28 U.S.C. § 2254(d)(1), a district court must first "start with 'the propriety of the trial court's evidentiary ruling.'" *Bell v. Ercole*, No. 08-3539-pr, 2010 WL 726023, at *2 (2d Cir. 2010) (slip copy) (quoting *Hawkins v. Costello*, 460 F.3d 238, 242-44 (2d Cir. 2006) (quoting *Wade v. Mantello*, 333 F.3d 51, 59 (2d Cir. 2003)). "A trial court does not necessarily violate AEDPA by misapplying its state's evidentiary law, but "[t]he inquiry . . . 'into possible state evidentiary law errors at the trial level' assists . . . in 'ascertain[ing] whether the appellate division acted within the limits of what is objectively reasonable.'" *Id.* (alteration in original) (quoting *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000)).[6]

---

[6]      *See also Green v. Herbert*, No. 01CIV.11881SHSAJP, 2002 WL 1587133, at *12 (S.D.N.Y. June 18, 2002) ("The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional.") (citing *Brooks v. Artuz*, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct.17, 2000).

In *People v. Ciaccio*, 47 N.Y.2d 431, 439, 418 N.Y.S.2d 371, 375 (1979), the New York Court of Appeals held that the jury is the only arbiter of whether any witness' testimony is truthful, and where the sole reason for examining an expert witness "is to bolster the testimony of another witness [ ] by explaining that his version of the events is more believable than the defendant's," such expert witness testimony is inadmissible. *Id.* The same is true is a matter of federal evidentiary law: As the Second Circuit and Supreme Court have explained, "It is a well-recognized principle of our trial system that "determining the weight and credibility of [a witness's] testimony. . . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men. . . ." *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) (quoting *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891) and citing *United States v. Scop*, 846 F.2d 135, 142 (2d Cir.1988) ("The credibility of witnesses is exclusively for the determination by the jury, and *witnesses may not opine as to the credibility of the testimony of other witnesses at the trial*.") (internal citation omitted and emphasis added in *Nimely*)).

Here, respondent disagrees with petitioner's categorization of Detective Stambach's testimony as "opinion/expert" testimony which usurped the jury's role, and argues that it was petitioner's counsel who "opened the door" on his cross-examination of Detective Stambach and gave rise to the necessity for recalling the witness. People's Appellate Brief, 2004 5490142, at *19-21 (citing *People v. Massie*, 2 N.Y.3d 179, 183, 777 N.Y.S.2d 794 (N.Y. 2004); *People v. Melendez*, 55 N.Y.2d 445, 451 (N.Y. 1982) ("Where, however, the opposing party "opens the

(petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); *Jones v. Stinson*, 94 F. Supp.2d 370, 391-92 (E.D.N.Y.) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis), *rev'd on other grounds*, 229 F.3d 112 (2d Cir. 2000)).

door" on cross-examination to matters not touched upon during the direct examination, a party

has the right on redirect "to explain, clarify and fully elicit [the] question only partially

examined" on cross-examination.") (quotation and citation omitted)); *see also United States v.

Segines*, 17 F.3d 847, 856 (6th Cir.1994) ("When one party has 'opened the door' on an issue, by

eliciting prejudicial or inadmissible testimony, 'an opponent, in the court's discretion [may]

introduce evidence on the same issue to rebut any false impression that might have resulted from

the earlier admission.'") (citations omitted)). "In these cases, an inadmissible or prejudicial issue

is generally brought up at trial, and the opposing party is allowed, at the court's discretion, to

offer evidence on the same subject as a rebuttal. *Johnson v. Baker*, No. 1:08-CV-00038, 2009

WL 3486000, at *6 (W.D. Ky. Oct. 23, 2009) (citing *United States v. Ramos*, 861 F.2d 461, 468

(6th Cir. 1988); *United States v. Peco*, 784 F.2d 798, 805 (6th Cir.1986)).

     The Second Circuit recently explained in *Bell v. Ercole* that "[i]n the context of

challenged evidentiary rulings [in a habeas petition], the second analytical step depends on the

district court's decision regarding whether the evidentiary ruling was erroneous as a matter of

state law." *Bell*, 2010 WL 726023, at *2. If the state court's ruling erroneously applied state law,

then the "next question for the district court is 'whether "the omitted evidence [evaluated in the

context of the entire record] creates a reasonable doubt that did not otherwise exist."'" *Id.*

(quoting *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996) (alteration in original) (quoting *United

States v. Agurs*, 7 427 U.S. 97, 112 (1976))). "If, however, the challenged ruling was correct

under state law, then the district court must ask whether the evidentiary rule that was applied is

"arbitrary or disproportionate to the purposes it is designed to serve." *Id.* (quoting *Hawkins v.

Costello*, 460 F.3d at 245).

Petitioner Cunningham's appellate counsel made a strong argument on direct appeal that defense counsel's questioning during cross-examination of Detective Stambach did not "open the door" to the prosecutor adducing, on recall, Detective Stambach's opinion testimony about Cunningham's believability. On direct examination of Detective Stambach, the prosecutor elicited that he interviewed  and took a written statement from Cunningham on the evening of October 15, 2001, after Cunningham had already given a written statement to Detective Giardina. In the statement to Detective Stambach, Cunningham admitted that he had stabbed Townes after she "went to a drawer," that he subsequently blacked out, and that he later awakened to find her body at his feet. T.215-21.

Appellate counsel argued, "From the cross-examination of Detective Stambach. which consumed six pages, it is clear that defense counsel's focus was on Stambach's interrogation of appellant and his securing from appellant an inculpatory statement. In concentrating on the interview process, defense counsel was attempting to elicit information so that the jurors might have sufficient evidence upon which to determine that appellant's statement was not voluntary." To this end, defense counsel asked Detective Stambach:

> And it was your idea to interview Mr. Cunningham a second time?
> And it was also your idea to interview him alone, just the two of you?
> How long did you speak with him just the two of you?
> You also indicated to him that there would probably be some strong physical evidence that would link him to this crime; isn't that correct?
> So, basically, you put pressure on him to come and tell the truth, wouldn't you say that?
> *Now, when he gave you the second statement by the way, did you tell him at any time during this verbal conversation with him that you knew he did this [i.e., kill Effie Townes]?* (T.233-235; emphasis supplied).

Petitioner argued that Detective Stambach's answer, "I believed that he had [sic] did it,"T.235,

was not responsive to defense counsel's last question. Counsel had asked if Stambach had told petitioner as an interrogation tactic during the arguably coercive questioning session whether Stambach believed that appellant had killed Effie Townes. Petitioner argued the Detective Stambach chose to answer a question not asked by defense counsel and instead volunteered that he, personally, believed that petitioner had killed Effie Townes. Petitioner contended that trial counsel could not be said to have "opened the door" under these circumstances.

However, as respondent points out, trial counsel began his cross-examination by questioning Stambach about his "concerns" that Cunningham's statement was "not truthful," T.233; then moved to the second statement taken by Stambach and whether or not it "measured up with the crime scene and with other  information you had gotten from other witnesses," T.235; and followed up by asking Stambach if it was "his opinion" that defendant was telling the truth in the second statement, T.235.

On recall, the prosecutor directed Detective Stambach to defense counsel's questions concerning his reason for taking a second statement from petitioner–which was that he did not believe that the first one was truthful. T.273. The prosecutor then reminded Detective Stambach that he had told defense counsel during cross-examination that he believed Cunningham's second statement. T.273. In an attempt to clarify this testimony, the prosecutor elicited that Detective Stambach did not believe the portion of defendant's statement where he alleged that he acted in self-defense, T.274, because his investigation revealed that defendant had no defensive wounds or injuries while the victim had sustained nine (9) stab wounds to the chest, T.274-75. Respondent argues that "the prosecutor was entitled to clarify that while [Detective Stambach] believed most of [petitioner]'s statement because it was reconciled by the evidence, he did not

believe his claim of self-defense as it was not supported by the physical evidence." People's Appellate Brief, 2004 WL 5490142, at *21.

Turning to the merits of this evidentiary claim, the Court notes that Cunningham, on direct appeal, asserted that "the police detective's impermissible opinion testimony . . . effectively destroyed appellant's defense of justification," which arguably may can be read as suggesting that the error infringed upon any of his right guaranteed by the federal constitution to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302-303 (1972) (discussing defendant's weighty interest in presenting exculpatory evidence so as to fulfill guarantee of fair trial under constitution).[7] Cunningham's argument has some force. However, I cannot find that any error by the trial court in allowing Detective Stambach's recall testimony was harmful given the overwhelming evidence of Cunningham's guilt. This Report and Recommendation has already summarized the evidence put forth at Cunningham's trial. It is well settled that justification is not a defense to the use of deadly physical force unless the actor reasonably believes that another person is using or is about to use deadly physical force against him and he is not able to retreat with complete safety (N.Y. Penal Law § 35.15(2)(a); *see People v Goetz*, 68 N.Y.2d 96, 105-07 (N.Y. 1986); *People v McManus*, 67 N.Y.2d 541, 545-47 (N.Y. 1986).

---

[7]       Even assuming *arguendo* that a habeas petitioner can establish the trial court committed error, he must also "allege that the state evidentiary error violated an identifiable constitutional right. This necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system." *Id.* at n.21 (citing *Landy v. Costello*, No. 97-2433, 141 F.3d 1151 (table), 1998 WL 105768 at *1 (2d Cir. Mar.9, 1998) ("To the extent that this claim is based on a *Rosario* violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over *Rosario* material arises under state law. Thus, the only question is whether the prosecution violated *Brady*."); *Arocho v. Walker*, 01 Civ. 1367, 2001 WL 856608 at *3 (S.D.N.Y. July 27, 2001) ("Violation of the notice requirement of [N.Y. C.P.L.] § 710.30 is purely a matter of state law and raises no constitutional issues for a habeas court to review."); *Ventura v. Artuz*, 2000 WL 995497, at *12 (same); *Roldan v. Artuz*, 78 F. Supp.2d at 276 (*Molineux* claim not cognizable as such on habeas); *Benitez v. Senkowski*, 1998 WL 668079 at *5 (bolstering claim does not state federal claim); *Ayala v. Hernandez*, 712 F. Supp. 1069, 1074 (E.D.N.Y.1989) (police "bolstering" of eyewitness identification testimony held to be, at most, violation of state rule, and thus not could not form basis for constitutional claim)).

The evidence at Cunningham's trial, both in quantity and quality, was extremely compelling and overwhelmingly established petitioner's guilt of second degree murder and disproved the defense of justification beyond a reasonable doubt, particularly in view of the uncontroverted evidence that petitioner stabbed the slightly built victim nine times and sustained no defensive wounds himself. *See Perkins v. Herbert*, __ F.3d __, 2010 WL 610229, at *14 (2d Cir. Feb. 23, 2010) ("Ultimately, however, '[t]he strength of the prosecution's case is probably the single most critical factor' in a harmless error analysis.") (quoting *United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006) (quoting *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir .1994) (alteration in original)). "Although harmless error analysis originally focused on whether the error had affected the jury, over the years [the Second Circuit's] focus has shifted from the impact of the error on the jury's analysis to an assessment of the strength of the remaining evidence of guilt." *Perkins v. Herbert*, 2010 WL 610229, at *14 (citing *United States v. Mejia*, 545 F.3d 179, 199 n. 5 (2d Cir. 2008)). In this case, I am not in "in virtual equipoise," *O'Neal v. McAninch*, 513 U.S. 432, 433 (1995), as to the harmlessness of the error," under the harmless error standard enunciated in *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993). *See Fry v. Pliler*, 551 U.S. 112, 122, 127 S.Ct. 2321, 2328 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman* [*v. California*], 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 [(1963)]. Since the Ninth Circuit correctly applied the *Brecht* standard rather than the *Chapman* standard, we affirm the judgment

below."). Furthermore, I am satisfied that any error was harmless beyond a reasonable doubt so as to satisfy the *Chapman* standard. *See Chapman*, 386 U.S. at 24 ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). For the foregoing reasons, I recommend dismissal of Cunningham's claim regarding the admission of Detective Stambach's recall testimony as lacking in merit under any standard of review.

C. **Weight of the Evidence and Legal Sufficiency of the Evidence Supporting the Convictions (Grounds Three and Four)**

In grounds three and four of his Petition, Cunningham argues that the jury's verdict was against the weight of the evidence, especially in light of the proof offered in support of his justification defense. He also asserts that the verdict was based on legally insufficient evidence in violation of due process because of the existence of a valid intoxication defense. Respondent argues that these claims are unexhausted but procedurally defaulted. Respondent points out that although petitioner presented these claims to the intermediate state appellate court, he did not present either argument in his leave application to the New York Court of Appeals. Thus, Cunningham did not complete one full round of appellate review with regard to the weight-of-the-evidence claim and the legal-insufficiency claim, leaving them unexhausted. Even if petitioner were to return to state court in an attempt to exhaust them, he would face an absence of corrective process. However, the claim is deemed exhausted because it is procedurally barred from presentation to a state court. A federal claim is procedurally defaulted when a prisoner has "failed to meet the State's procedural requirements" for presenting it and has therefore "deprived the state courts of an opportunity to address [the claim] in the first instance." *Coleman*, 501 U.S. at 732. "For exhaustion purposes, 'a federal habeas court need not require that a federal claim be

presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d at 120 (citing *Harris v. Reed*, 489 U.S. at 263 n. 9).

At this stage, New York procedural rules bar Cunningham from attempting to raise his sufficiency claim. By statute, New York law used to specifically provide for only a single application for direct review. *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000) (relying on relied on former New York Rules for the Court of Appeals § 500.10(a) (discussing leave applications for criminal appeals). N.Y. Rules for the Court of Appeals § 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. R. Ct. § 500.20. *Accord*, *e.g.*, *Colon v. Connell*, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n.4 (S.D.N.Y. July 9, 2009). Although Rule 500.20 "does not specifically state that there may be only one application for appeal, *see* N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." *Colon v. Connell*, 2009 WL 2002036, at *6 n.4. In addition, N.Y. Court Rule 500.20(d) "states that a request for reargument or reconsideration may not raise any new points, implying that a wholly new request for leave to appeal would be impermissible." *Id.* ("Since the petitioner here failed to raise his claims relating to the search on direct appeal, they are procedurally barred and not cognizable on habeas review.") (citing *Roa v. Portuondo*, No. 02 Civ. 6116, 2007 U.S. Dist. LEXIS 74387, at *32-33 (S.D.N.Y. Oct. 5, 2007) (declining to review issue that petitioner had failed to raise on direct appeal); *Murray v. Williams*, No. 05 Civ. 9438, 2007 WL 430419, at *8 (S.D.N.Y. Feb. 8, 2007) (same) (citing *People v. Nesbitt*, 211 A.D.2d 490, 621 N.Y.S.2d 867 (App. Div. 1st Dept. 1995) (holding that the "[d]enial of the

application for permission to appeal by the judge or justice first applied to is final and no new application may thereafter be made to any other judge or justice")); *Oquendo v. Senkowski*, 452 F. Supp.2d 359, 368 (S.D.N.Y. 2006) (same)); *Velazquez v. Poole*,  614 F. Supp.2d 284, 319 (E.D.N.Y. 2007) (same).

Collateral review of Cunningham's claim in state court is also barred because "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted Cunningham to raise the claim on direct appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (mandating that court dismiss claim if sufficient facts appeared on the record to have permitted direct review but defendant unjustifiably failed to raise claim on direct appeal). Because a state court would find Cunningham's unexhausted claims procedurally barred from state review, they are deemed exhausted. *Grey*, 933 F.2d at 120-21.

Ordinarily, federal courts may not review procedurally barred claims unless the petitioner can show both cause for the default and prejudice resulting therefrom, or that a fundamental miscarriage of justice would occur if the federal court declines to review the habeas claim. *See Coleman v. Thompson*, 501 U.S. at 749-50; *Harris v. Reed*, 489 U.S. at 262. Here, the petitioner has not suggested any circumstance that would constitute cause for the default. Thus, there is no need to analyze whether prejudice resulted. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir.1985); *accord*, *e.g.*, *Green v. Walsh*, No. 03 Civ. 908, 2006 WL 2389306, at *15 (S.D.N.Y. Aug. 17, 2006). The "fundamental miscarriage of justice" exception requires a showing of actual innocence, and Cunningham has not presented any new evidence that would suggest that he could meet this standard. *Murray v. Carrier*, 477 U.S. at 496. As a result, the Court recommends dismissing this claim as procedurally barred from habeas review.

**D.      Harshness and Excessiveness of Petitioner's Sentence (Ground Five)**

On direct appeal, the Appellate Division held that the sentence of 25 years to life imposed on the murder count was not unduly harsh or severe, rejecting Cunningham's request to have the sentence reduced in the interest of justice to 15 years to life.  However, that court did agree with Cunningham that the sentence on the count charging criminal possession of a weapon had to be vacated as illegal because it was indeterminate. *Id.* (citing N.Y. PENAL LAW §§ 70.00 (2)(d); (3)(b); § 70.06(4)(b)). Accordingly, the Appellate Division remitted the matter to Erie County Court for resentencing on the weapons-possession count. *Id.* (citation omitted). As noted above in this Report and Recommendation, Cunningham ultimately was properly re-sentenced.

In any event, Cunningham's sole sentencing-related habeas contention concerns the length of his sentence for intentional murder. The claim appears to have been raised entirely on state law grounds, relying on the New York State Legislature's grant to the Appellate Division of "the discretionary power to reduce or modify an unduly harsh or excessive sentence in the interest of justice." N.Y. CRIM. PROC. LAW §§ 470.15(2)(c) and 470.20(6)).)

"As a threshold matter, to the extent that petitioner relies on state law as a grounds for an excessive sentence claim, such claim is not cognizable on habeas review." *Hudgins v. People of the State of New York*,  No. 07-CV-01862-(JFB), 2009 WL 1703266, at *9 (E.D.N.Y. June 18, 2009) (citing *Wilson v. Ercole*, No. 06-cv-553 (DLI), 2009 U.S. Dist. LEXIS 23447, at *30-*31, 2009 WL 792089 (E.D.N.Y. Mar. 23, 2009) ("On his direct appeal, petitioner . . . did not contend that this sentence violated his constitutional rights, but instead urged the Appellate Division to reduce the sentence under C.P.L. § 470.15(6)(b), which gives the state court broad plenary power to modify a sentence that is unduly harsh or severe, though legal. The Appellate Division

-33-

declined, stating that the 'sentence imposed was not excessive.' Petitioner now re-asserts this identical claim. Given that this claim rests exclusively on state law, the court may not review it under 28 U.S.C. § 2254(d).") (internal citations omitted)). Because Cunningham's sentencing claim asking for a reduction in the interests of justice relies solely on state-law principles, it is not cognizable on federal habeas review. *E.g.*, *Edwards v. Marshall*, 589 F. Supp.2d 276, 290 (S.D.N.Y. 2008) (citing *Estelle v. McGuire*, 502 U.S. at 67-68 (stating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" ).

In any event, to the extent Cunningham also attempts to raise a violation of federal constitutional law in connection with sentencing, that claim also has no merit. For the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *see also Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y.1988), *aff'd*, 875 F.2d 857 (2d Cir.1989). In this case, petitioner was sentenced to an indeterminate term of twenty-five to life imprisonment for the top count of murder in the second degree. Such a sentence is clearly within the range prescribed by New York law. "For class A-I felonies, New York law imposes an indeterminate sentence with a mandatory minimum of fifteen or twenty-five years and a maximum of life imprisonment." *Cruz v. Smith*, No. 05-CV-6070 (KMK)(GAY), 2009 WL 816749, at *9 n.14 (S.D.N.Y. Mar. 25, 2009) (citing N.Y. PENAL LAW §§ 70.00(2)(a), 70.00(3)(a)(i)). Therefore, Cunningham's sentence raises no constitutional concerns. *Accord*, *e.g.*, *Hudgins*, 2009 WL 1703266, at *9; *Valentine v. Lord*, 03-CV-4834, 2006 U.S. Dist. LEXIS 48625, 2006 WL 1997708, at *4, 2006 WL 1997708 (S.D.N.Y. July 18, 2006) ("[T]he statutory minimum for felony [second degree] murder in New York is 15 years and the statutory maximum

is life imprisonment.") (citations omitted)).  Accordingly, this claim should be dismissed as not

cognizable on federal habeas review.

### F.     Violation of the C.P.L. § 710.30 Notice Requirement (Proposed Amended Claim)

C.P.L. § 710.30 requires that

> 1. Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, or (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

> 2. Such notice must be served within fifteen days after arraignment and before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial, pursuant to subdivision one of section 710.40, to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such notice, thereafter and in such case it must accord the defendant reasonable opportunity thereafter to make a suppression motion.

> 3. In the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial unless he has, despite the lack of such notice, moved to suppress such evidence and such motion has been denied and the evidence thereby rendered admissible as prescribed in subdivision two of section 710.70.

N.Y. Crim. Proc. Law § 710.30(1)-(3). Cunningham seeks to amend his Petition to add a

claim that the prosecutor's use at trial of his allegedly involuntary statements to the police was

improper because the prosecution failed to provide him with the statutorily required notice

delineated in CPL § 710.30.

A district court has the discretion to grant a stay only if (a) "good cause" exists for the

petitioner's failure to exhaust his claims in state court prior to filing his federal habeas petition,

(b) the unexhausted claims are "potentially meritorious", *and* (c) the petitioner did not engage in intentionally dilatory litigation tactics. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). If the proposed new claim is untimely, the petitioner also must fulfill the requirements of  Federal Rule of Civil Procedure 15(c) for the amendment of pleadings and demonstrate that the new claim "relates back" to the original Petition.

In the present case, the reason why Cunningham should not be granted a stay with regard to his C.P.L. § 710.30 claim is the same reason why that claim cannot provide a basis for federal habeas relief–it presents merely an alleged violation of state statutory law. It is well settled that "federal habeas corpus relief does not lie for errors of state law", absent a corresponding violation of federal constitutional rights. *Estelle v. McGuire*, 502 U.S. at 67-68 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  As discussed further below, courts in this Circuit have held claimed violations of C.P.L. § 710.30 to be not cognizable on federal habeas review.  *E.g.*, *Brown v. Harris*, 666 F.2d 782, 785 (2d Cir.1981) ("Brown cites no case indicating that this statute [C.P.L. § 710.30], or that a notice requirement in general, is constitutionally mandated."), *cert. denied*, 456 U.S. 948 (1982). Cunningham could not fulfill the *Rhines* requirement of demonstrating that his C.P.L. § 710.30 claim is "potentially meritorious", much less "not plainly meritless" because it does not present a colorable federal constitutional claim. "The notice requirements of CPL § 710.30 are a creation of state statute. Courts in this circuit faced with habeas claims grounded in CPL § 710.30 have repeatedly held that such claims do not implicate federal constitutional rights, and accordingly are not cognizable on habeas review."  *Martinez v. Miller*, No. 9:04-CV-0090 (GTS/DEP), 2009 WL 1272069, at *16 (N.D.N.Y. May 5, 2009) (adopting Report and Recommendation)

("Petitioner's claim regarding lack of the statutorily required notice is based entirely on an alleged state law violation, and he has not alleged, much less proven, that his alleged federal constitutional rights were violated by the prosecutor's failure to provide the required notice. Accordingly, I recommend that this claim, based on an alleged state procedural error, be dismissed.") (citing *Brown v. Harris*, 666 F.2d 782, 785 (2d Cir.1981) ("Brown cites no case indicating that this statute [C.P.L. § 710.30], or that a notice requirement in general, is constitutionally mandated."), *cert. denied*, 456 U.S. 948 (1982); *Moss v. Phillips*, No. 03-CV-1496, 2008 WL 2080553, at *12 (N.D.N.Y. May 15, 2008) (Kahn, D.J.) ("alleged violations of CPL § 710.30's notice provision-a state procedural law-do not provide an independent ground for federal habeas relief."); *Dotson v. Ercole*, No. 06 Civ. 7823, 2007 WL 1982730, at *4 (S.D.N.Y. Jul.10, 2007) ("Violation of this state right to notification does not rise to the level of a constitutional violation.") (quoting *Aziz v. Warden of Clinton Corr. Fac.*, No. 92 Civ. 0104, 1992 WL 249888, at *10 (S.D.N.Y. Sept. 23 1992), *aff'd*, 993 F.2d 1533 (2d Cir.1993), *cert. denied*, 510 U.S. 888, 114 S.Ct. 241 (1993)); *McCullough v. Filion*, 378 F. Supp.2d 241, 261 (W.D.N.Y.2005) (Larimer, D.J.) (violation of CPL § 710.30 is not cognizable on federal habeas review)).

Furthermore, there is no indication of "good cause" for Cunningham's failure to raise the claim earlier. Indeed, the C.P.L. § 440.10 court rejected the claim because it was without merit and procedurally barred pursuant to C.P.L. § 440.10(2)(c) since it could have been raised on Cunningham's direct appeal. Thus, a stay would have been an abuse of the district court's discretion. *See Rhines v. Weber*, 544 U.S. at 277-78; *See McCullough v. Bennett*, 438 F. Supp.2d 185, 189 (W.D.N.Y. 2006) (Bianchini, M.J.) (Because staying the amended petition to

permit exhaustion of procedurally defaulted and not-cognizable claim [of an alleged violation of C.P.L. § 710.30's notice requirement] would be pointless, the Court denies, with prejudice, Cunningham's motion for a stay.)

## V.       CONCLUSION

Based upon the foregoing, I recommend that the Petition filed by James Cunningham in this matter be DENIED and DISMISSED in all respects. I further recommend that Cunningham's motion for a stay be DENIED with prejudice and Cunningham's motion to lift the stay be DENIED as moot. I further find that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), and I recommend that a certificate of appealability not issue with respect to any of the claims set forth in his Petition or Proposed Amended Petition.

/s/ Victor E. Bianchini

_____
                    VICTOR E. BIANCHINI
                    United States Magistrate Judge

Dated: March 18, 2010
          Rochester, New York

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: March 18, 2010
       Rochester, New York